UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| BETTY HATMAKER and <br> CHARLENE EDWARDS, | ) <br> ) <br> ) | |
| Plaintiffs, | ) <br> ) | |
| v. | ) | No.: 3:15-CV-351-TAV-HBG |
| | ) | |
| CONSOLIDATED NUCLEAR <br> SECURITY, LLC, | ) <br> ) <br> ) | |
| Defendant. | ) | |

## **MEMORANDUM OPINION**

Before the Court is defendant's motion for summary judgment [Doc. 27]. Plaintiffs responded in opposition to the motion [Doc. 32], and defendant replied [Doc. 33]. For the reasons explained below, defendant's motion will be granted and this case will be dismissed.

**I.  BACKGROUND**

Plaintiffs are individuals who were employed at various times by contractors for the Y-12 National Security Complex in Oak Ridge, Tennessee ("Y-12").[1] These contractors include Union Carbide, Martin Marietta, Lockheed Martin, BWXT, Babcock & Wilcox, LLC, and Consolidated Nuclear Security, LLC, among others (collectively "contractors").

---

[1] Unless otherwise noted, the general information in this section is drawn from plaintiffs' depositions [Doc. 32-1] and factual statement in support of their response [Doc. 32]. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (all facts and all inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party).

Defendant Consolidated Nuclear Security, LLC ("CNS") is the current contractor operating and administering the healthcare plans for retirees of the predecessor contractors.

Plaintiffs contend that employees were attracted to positions with the contractors, in part, because of the retirement program. They assert that many employees accepted lower levels of compensation, in comparison to employment they could have obtained elsewhere, based on an understanding derived from representations made by the contractors that they were earning a valuable package of retiree benefits—including healthcare benefits—which would provide security and stability during retirement.

The contractors entered into a series of agreements with plaintiffs providing for terms and conditions of employment. The agreements provide healthcare benefits, which include medical, prescription, dental, vision, Medicare subsidy, life insurance, and other related benefits. The agreements also covered spouses and surviving spouses of retired employees, as well as certain defined dependents. Generally, retirees, their spouses, and their defined dependents that are entitled to a pension under the pension plan are eligible for healthcare benefits upon retirement.

Over the years, several different individual contracts were executed that defined the healthcare benefits the employees would receive. As each new contractor took over the previous one, it adopted the provisions of these agreements. At no time prior to January 1, 2015, were any of the terms of the previous employment agreements, and specifically the provisions of retiree healthcare benefits, ever rejected by an incoming contractor.

Some of the prior contractors adopted an early retirement program. Plaintiffs contend the contractors represented to employees that accepting early retirement would enable them to retain their healthcare benefits and avoid application of any future changes to the benefits. According to plaintiffs, this was a powerful motivator for those eligible employees to accept early retirement.

Plaintiffs allege that during retirement seminars and exit interviews, and more generally throughout their years of employment at Y-12, employees were misinformed about the level of healthcare benefits and out-of-pocket costs they would be subjected to at the time they ended their employment. In their complaint, plaintiffs detail a number of representations made to them regarding the retirement healthcare benefits. Those representations include, but are not limited to, the following: (1) retirees "would be able to keep the exact policy" they had as employees; (2) "healthcare benefits would continue [after retirement] at the levels they had been while" actively employed; (3) "premium amount might increase slightly"; (4) retirees "would have comparable health care benefits through retirement"; (5) "those under age 65 could continue in their retirement plan after retirement"; (6) "[n]o changes were expected"; (7) "group coverage managed by the company would continue until . . . death"; (8) "healthcare benefits could not be terminated"; (9) the plan was "guarantee[d]"; (10) employees "were told often and regularly that [they] would continue to receive the same benefits for life" [Doc. 1 ¶ 32;

3

*see, e.g.*, Doc. 32-1 pp. 22, 26, 45–46]. Plaintiffs contend that statements such as these induced employees to believe that they would continue to receive company-subsidized medical and prescription-drug benefits for their lifetimes at the levels that were in place at the time they retired. Plaintiff Charlene Edwards retired in 2006, and plaintiff Betty Hatmaker retired in 2010.

On July 1, 2014, CNS became the contractor responsible for operating Y-12. On January 1, 2015, defendant made several changes to the healthcare and welfare benefits of plaintiffs which significantly altered the cost, coverage, and value of the benefits. The change in benefits had the following effects on plaintiffs: (1) increased premiums for medical and drug prescription benefits; (2) significant reductions in the level of coverage for medical services and prescription drug benefits; (3) the inability to obtain or maintain alternative medical and/or prescription drug coverage at a reasonable cost due to their now advanced ages and impaired health conditions.

Plaintiffs acknowledge that the contractors retained the ability to reduce or terminate the retiree healthcare benefits at any time. Plaintiffs, however, assert that employees and agents of the previous contractors, acting in a fiduciary capacity, made numerous misrepresentations regarding lifetime rights to post-retirement healthcare benefits that would remain unchanged from the levels they had as active employees. Plaintiffs do not allege that CNS made misrepresentations regarding their retirement benefits.

Plaintiffs bring this action on behalf of Y-12 retirees and other beneficiaries of the plans seeking to either restore their healthcare benefits to the levels that existed prior to January 1, 2015, or to be reimbursed for the value of the increased out-of-pocket costs and the reduction in the level of benefits as a result of the changes. Plaintiffs allege that CNS breached its fiduciary duty arising under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, *et seq*.

Defendant filed a motion to dismiss [Doc. 6], which the Court granted with regard to each of plaintiffs' claims except for a misrepresentation claim brought pursuant to 29 U.S.C. § 1132(a)(3) [Doc. 19]. Defendant now moves for summary judgment on the remaining misrepresentation claim [Doc. 27]. Plaintiffs responded in opposition to the motion [Doc. 32], and defendant replied [Doc. 33].

## II. STANDARD OF REVIEW

Summary judgment under Federal Rule of Civil Procedure 56 is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is material if it might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue of material fact exists if a reasonable trier of fact could find in favor of the non-moving party. *Id.* The moving party bears the burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Moore v. Phillip Morris Cos., Inc.*, 8 F.3d 335, 339 (6th Cir. 1993). Accordingly, all facts and all inferences to be drawn therefrom must be

viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Burchett v. Kiefer*, 301 F.3d 937, 942 (6th Cir. 2002).

"Once the moving party presents evidence sufficient to support a motion under Rule 56, the nonmoving party is not entitled to a trial merely on the basis of allegations." *Curtis Through Curtis v. Universal Match Corp., Inc.*, 778 F. Supp. 1421, 1423 (E.D. Tenn. 1991) (citing *Celotex*, 477 U.S. at 317). Likewise, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must present affirmative evidence in order to defeat a properly supported motion for summary judgment." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (internal quotations omitted).

The Court's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue of fact a proper question for the fact finder. *Anderson*, 477 U.S. at 250. Thus, the Court does not weigh the evidence or determine the truth of the matter. *Id.* at 249. The Court also does not search the record "to establish that it is bereft of a genuine issue of material fact." *Street*, 886 F.2d at 1479–80. In short, "[t]he inquiry performed is the threshold inquiry of determining whether there is a need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a trier of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## III. ANALYSIS

Plaintiffs' claim arises under a theory that defendant and the other contractors breached their fiduciary duties in violation of certain provisions of ERISA. "[E]mployers and third-party administrators who manage welfare benefit plans for employees and beneficiaries act with the highest fiduciary duty known to the law." *Haviland v. Metro. Life Ins. Co.*, 730 F.3d 563, 575 (6th Cir. 2013). "A fiduciary breaches his duty if he provides the plan participants or beneficiaries with materially misleading information, regardless of whether the statements or omissions were made negligently or intentionally." *Id.*

In order to establish a claim for breach of fiduciary duty based on alleged misrepresentations concerning coverage under an employee benefit plan, plaintiffs must show that: (1) defendant acted in a fiduciary capacity when it made the challenged representations; (2) defendant's statements constituted material misrepresentations; and (3) plaintiffs relied on defendant's material misrepresentations to their detriment. *See James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002).

Defendant argues, *inter alia*, that they are not the proper defendant for plaintiffs' sole remaining claim, as plaintiffs do not allege that CNS made any misrepresentations. Plaintiffs provide little substantive response to this defense, but seem to argue that because prior contractors made material misrepresentations to plaintiffs, and as the current fiduciary CNS is obligated to act in the best interest of its beneficiaries, CNS must act in conformity

with the prior contractors' misrepresentations [Doc. 32 p. 23]. Plaintiffs cite to no authority suggesting that CNS assumed liability for the misrepresentations of prior contractors when it took control of the pension plans in 2014, nor that CNS is required to act in conformity with the misrepresentations of the prior contractors.[2]

Normally, when analyzing a misrepresentation case, the Court must first determine whether the defendant was acting in a fiduciary capacity when making the challenged representations. *James*, 305 F.3d at 449 (finding that a plaintiff must show that the defendant acted in a fiduciary capacity when it made the challenged representations). Here, however, there is no dispute that defendant did not make the challenged representations. Further, there is no dispute that CNS was not a fiduciary at the time the challenged representations were made, as CNS did not assume control of the plans until 2014. *See Haviland*, 730 F.3d at 575 (finding a person or entity qualifies as a fiduciary with respect to a plan to the extent: (1) "he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets," or (2) "he has any discretionary authority or discretionary responsibility in the administration of such plan") (citing 29 U.S.C.

---

[2] Even if CNS were bound to act in conformity with its predecessors' misrepresentations, it is not clear that a *misrepresentation* claim against CNS would be the proper avenue for relief. The fact that a misrepresentation claim under 29 U.S.C. § 1132(a)(3) is the only claim advanced in the complaint which survived defendant's motion to dismiss thus lends support to the Court's finding on this issue. To that end, to the extent plaintiffs attempt to advance a claim of breach of fiduciary duty under 29 U.S.C. § 1106 in their response brief [Doc. 32 pp. 21–23], the Court finds that analysis of such a claim is not warranted because there is no § 1106 claim before the Court.

§ 1002(21)(A))). Plaintiff is thus unable to maintain an ERISA misrepresentation claim against CNS, and CNS is the only defendant in this case.

In addition to the requirements of controlling case law, the Court's finding is supported by ERISA itself. Section 1109(b) states that "no fiduciary shall be liable with respect to a breach of fiduciary duty under this title if such breach was committed before he became a fiduciary or after he ceased to be a fiduciary." 29 U.S.C. § 1109(b). Other Courts have applied this section to shield defendants not only from liability for breaches of past fiduciaries, but also to shield them from liability for failing to correct breaches committed by prior fiduciaries. *See Beauchem v. Rockford Prods. Corp.*, No. 1 C 50134, 2004 WL 432328, at *3 (N.D. Ill. Feb. 6, 2004) ("ERISA expressly states no fiduciary shall be liable for a breach committed before he became a fiduciary or after he ceased to be one. Allowing a fiduciary to be liable for failing to correct a breach committed by prior fiduciaries would destroy the protection of section 1109(b).") (internal citations omitted); *Chao v. USA Mining, Inc.*, No. 1:04-cv-1, 2007 WL 208530, at *17 (E.D. Tenn. Jan. 24, 2007) ("The duty imposed to remedy the fiduciary breaches of others is limited by 29 U.S.C. § 1109(b)."). The breach at issue in a misrepresentation case is "provid[ing] plan participants or beneficiaries with materially misleading information," *Haviland*, 730 F.3d at 575, and there is no dispute that the alleged breaches in this case were committed by past fiduciaries. Defendant is thus shielded from liability for these alleged breaches by § 1109.

## IV. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment [Doc. 27] will be **GRANTED** and this case will be **DISMISSED**.

AN APPROPRIATE ORDER WILL FOLLOW.

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE
